O’Neill, J.,
concurring in part and dissenting in part.
{¶ 168} I must dissent from the affirmance of the sentences of death imposed in this case. I concur with the majority in affirming the convictions.
{¶ 169} As a justice of the Supreme Court of Ohio, I am being asked to stand with the other members of this court at the head of the line of 11 million Ohioans and say “off with his head.” This court’s review of a case in which a sentence of death has been imposed is supposed to be the last step in a logical statutory process in which juries, then trial courts, and then the justices of this court independently weigh the truly bad facts of the crime against the evidence that excuses or explains the crime. And there are certain external limits on that process. For example, we do not execute mentally impaired people. We do not. That is a decision that we as a society, with guidance from the United States Supreme Court, have made. And to parallel a case involving a clear mental impairment with the case before us, that decision is not implemented through a license of forgiveness that we must ask for the defendant’s permission to exercise. That decision is a right owned by 11 million Ohioans.
{¶ 170} My belief that capital punishment is barbaric, backward, ineffective, outrageously expensive, and unconstitutional is no surprise to anyone. See State v. Wogenstahl, 134 Ohio St.3d 1437, 2013-Ohio-164, 981 N.E.2d 900, ¶ 2 (O’Neill, J., dissenting). Capital punishment serves no purpose other than vengeance. However, the law of Ohio is such that the people are willing to execute some persons who commit murder, but not all of them.
{¶ 171} In order to properly do our jobs, the members of this court must consider the mitigating factors in each capital case. This consideration is a minimum statutory requirement borne by this court. Let me be clear here. The statutory right to a mitigation hearing is unconditionally a right belonging to every defendant charged with a capital offense. If, as here, the defendant wants to do the equivalent of sitting in the courtroom with duct tape over his mouth, that is his choice and his right. Surely, we cannot force the defendant’s cooperation.
{¶ 172} However, the absolute, unconditional right to a mitigation hearing also belongs to the 11 million Ohioans who need to be convinced, beyond a reasonable doubt, that they have made the right decision in terminating the life of a fellow citizen. It is the people’s right to due process.
*211 {¶ 173} When a defendant pleads guilty to a capital offense and waives a mitigation hearing, the trial court has an affirmative duty to develop the evidence in any manner available to aid the process of weighing the aggravating circumstances against the mitigating factors of the case. That is the law of Ohio. This duty flows as a matter of basic fairness and due process from the three-judge panel’s statutory duty to “examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly” whenever a capital defendant pleads guilty to aggravated murder. R.C. 2945.06. It would be inherently illogical and fundamentally unfair to have the state and the three-judge panel call witnesses to prove guilt and aggravating circumstances, only to leave the panel insufficiently informed of crucial details and unable to adequately comply with the statutorily mandated duty to weigh the mitigating factors involved. When potential mitigating factors are discovered as a mere afterthought from evidence offered for the purpose of proving guilt and aggravating circumstances, it can be little surprise that the balance weighs in favor of capital punishment. This case is a perfect example. Twenty-three witnesses testified, and the three-judge panel was left with the clear impression that a strong case in mitigation could have been presented. When that case was consciously not presented, the panel could come to only one conclusion: the mitigating evidence that was not presented did not outweigh the aggravating circumstances that were proven to be present.
{¶ 174} Much like the three-judge panel, this court has a need — and a right — to hear the truth, the whole truth, and nothing but the truth. At the risk of being overly salacious, the step-grandfather who was a victim here, it is alleged, on more than one occasion locked this defendant as an early adolescent in an attic and deprived him of food. By age 15, the defendant was a violent child who continued his felonious behavior while in the custody of the Ohio Department of Youth Services. He then spent the remainder of his teen years and his early adulthood up to age 27 behind bars in prison. And now the step-grandfather is dead, and his wife has been beaten, raped, and killed. This all happened when the defendant was age 28, roughly one year after his release from prison. It is hard to imagine a more horrific scenario.
{¶ 175} I absolutely reject the majority’s willingness to authorize the execution of this defendant, which is based on inadequate evidence of what happened here. The record here cries out for bringing in the social workers, the neighbors, the teachers, the probation officers, and any other persons who could help the court understand what happened in this case. The defendant’s permission to do that is not necessary. If the trial court fails to perform its duty, we at the Supreme Court simply cannot perform our duty. How can we, the -11 million people of Ohio, be convinced, beyond a reasonable doubt, that justice has been done if we do not know the whole story before we decide to end someone’s life?
*212 {¶ 176} In the present case, we know that the defendant was locked in an attic as a young boy and deprived of food, and we can rightly speculate that he endured other treatment of that type. We do not have many details as to the circumstances or extent of this abuse, because that information is not included in the record. We do know that his ostensible guardians, the two people who should have been responsible for seeing to it that a child was not locked in an attic without food and water, are dead. Before we as a Supreme Court decide on behalf of 11 million Ohioans whether the defendant should be executed, wouldn’t it be important to know the extent of that abuse and the effect that the abuse had on the defendant when he decided to take the life of his alleged abuser, his step-grandfather, and the person who allegedly did not prevent the abuse, his grandmother? Judge John Sutula from the three-judge panel stated on the record:
Mr. McDonnell, does your client understand that throughout the course of the first phase of the trial, * * * evidence [and] testimony [has shown] that there are substantial elements here that a * * * substantial mitigation defense could be presented? Mitigating factors could be presented, you know, starting with the murder of his mother, the disruptive childhood he had, the passing of his custody from one situation to another, the incarceration of his father, the incarceration of his stepmother, the situation where it was testified to by * * * his stepmother that there was potentially a situation where his grandfather kept him in an attic and withheld food and water for a period of time in his early adolescence, * * * that he was incarcerated by youth services when he was about 15 years old, that he, while there, * * * also committed another felonious assault, that he was incarcerated continuously from 15 through 27. And these are, you know, kernels of * * * mitigation factors that are substantial and that have been used probably in similar cases effectively.
{¶ 177} Whether the defendant chooses to participate in his defense or not is his right. However, this court has an independent duty to weigh mitigating factors regardless of the defendant’s participation in that process. As Supreme Court justices, we are being asked to sign the death warrant for this defendant. This is impossible to do without having all of the pertinent facts at our disposal. Due process demands no less.
{¶ 178} I respectfully dissent from the affirmance of the death sentences.
Pfeifer, J., concurs in the foregoing opinion to the extent that it details the inadequacy of the mitigation evidence.
*213 Sherri Bevan Walsh, Summit County Prosecuting Attorney, and Richard S. Kasay, Assistant Prosecuting Attorney, special prosecuting attorneys, for appel-lee.
Timothy Young, Ohio Public Defender, Kathryn L. Sandford, Supervisor, Death Penalty Division, and Randall L. Porter and Shawn P. Welch, Assistant Public Defenders, for appellant.